IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **OPTIMUM CONSTRUCTION, INC.**<br>17620-A Redland Road<br>Rockville, MD 20855<br><br>Plaintiff,<br><br>v.<br><br>**THE EMBASSY OF THE ARAB REPUBLIC OF EGYPT**<br>3521 International Court<br>Washington, DC 20008<br><br>SERVE ON: His Excellency the Ambassador of Egypt to the United States<br>3521 International Court<br>Washington, DC 20008<br><br>Defendant. | Case No. |

## COMPLAINT

COMES NOW, Plaintiff, Optimum Construction, Inc., by its undersigned attorneys, and file suit against The Embassy of the Arab Republic of Egypt, and for reasons states the following:

### JURISDICTION AND VENUE

1. This action is commenced in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between the Plaintiff and the Defendant and the amount in controversy exceeds $75,000.00.

2. Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Optimum entered into a Contract with The Embassy of the Arab Republic of Egypt while in the State of Maryland and The Embassy of The Arab Republic of Egypt's representations were made to Optimum while located within Maryland.

## PARTIES

3.  Plaintiff Optimum Construction, Inc. ("Optimum") is the aggrieved party in this suit and is a Maryland corporation engaged in the business of providing general contracting services in both residential and commercial construction throughout the Washington DC Metropolitan area, including in Maryland and the District of Columbia. Optimum is licensed to perform residential construction work in both Maryland and the District of Columbia. Optimum's principal place of business is located at 17620-A Redland Road, Rockville, MD 20855.

4.  Defendant The Embassy of the Arab Republic of Egypt (hereinafter referred to as "The Embassy") is an instrumentality of the Arab Republic of Egypt that does not enjoy sovereign immunity for commercial transactions engaged in within the United States of America. The Embassy's principal place of business is in Washington DC, but it conducts commercial business throughout the United States of America including within the State of Maryland. The Embassy buildings are undergoing constant renovations which require The Embassy, from time to time, to enter into contracts with vendors and contractors in Maryland and elsewhere to perform work on its premises.

## MATERIAL FACTS

5.  On or about March 16, 2020, Optimum entered into a contract with The Embassy using the AIA Document A105 – 2017, Standard Short Form of Agreement Between Owner and Contractor, a copy of which is attached hereto as Exhibit A.

6.  The "Project" included the renovation of kitchens and bathrooms at the Embassy, and miscellaneous repairs in the Embassy and the Residence. The Contract sum of $450,000.00 was due to be paid to Optimum pursuant to the following schedule:

   25% paid when materials delivered;

  25% at plumbing rough in;

  25% when tile installation starts;

  20% when paint starts; and

  5% upon final completion.

See Agreement at §3.2 and §4.1. The reason for the payment draw schedule in this Agreement is because Optimum undertook a risk in performing work for a foreign Embassy and anticipated the problem in getting paid for the work as it is now experiencing.

  7. In accordance with the Agreement, work commenced in April 2020 and Optimum submitted the first four (4) Applications for Payment. Specifically, Optimum submitted the following Applications to the Embassy:

  Application #1: $112,500.00;

  Application #2: $112,500.00;

  Application #3: $112,500.00; and

  Application #4: $90,000.00.

  8. By October 23, 2020, all kitchens were completed and turned over to the Embassy. In addition, all extra work was completed and accepted by the Embassy. This included the work involved in installing a kitchenette and a first-floor security guard bathroom which was also completed and turned over to the Embassy on that same date. An invoice in the amount of $29,039.69 was submitted for this additional work on October 26, 2020.

  9. The Embassy accepted Optimum's work and is using the rooms for their intended purpose. Thus, substantial completion was achieved.

10. There can be no dispute that the plumbing rough-in was completed, that painting commenced, and that tile work commenced. Notwithstanding the parties' clear agreement, The Embassy's Administrator, **Salah Gharib**, has failed and refused to make payments as agreed and, as a result, has breached the Agreement. Mr. Gharib has refused to provide a written explanation of why the payments were not made as required by the Agreement. Mr. Gharib concealed the Architect reports from Optimum and strung Optimum along by concealing their intent not to pay for the work.

11. In addition, The Embassy DCM, **Hatem Elatawy**, who was the final decision maker, refused to pay for the work without explanation and even threatened to sue Optimum if it stopped work as a result. Mr. Elatawy then engaged an outside consultant/architect, **Mohamad Alkhayer**, to rubber stamp whatever decisions that Mr. Elatawy made. Mr. Alkhayer was reportedly an Architect who would perform the functions reserved to the Architect in the Agreement. Notwithstanding, Mr. Alkhayer failed and refused to timely inspect the progress of the work and refused to approve work even though it was completed in accordance with the plans and specifications and was accepted and being used by The Embassy. Finally, Mr. Alkhayer refused to put anything in writing to justify withholding payment as required by the Agreement. Incredibly, the architect's limited role under the Agreement in connection with the payment process was merely to confirm whether materials were delivered, whether the plumbing was roughed-in, whether tile installation commenced, and whether painting commenced.

12. At present, the Embassy has failed to pay the following amounts that are due pursuant to the Agreement:

> Application #1: paid in full;
>
> Application #2: $28,125.00 owed;

        Application #3: $112,500.00 owed;

        Application #4: $90,000.00 owed;

        Additional Work - $29,039.69 owed.

13. In light of The Embassy's failure and refusal to pay the agreed upon amounts, without any written explanation for the same, Optimum stopped performing work pursuant to §12.3 of the Agreement and terminated the Agreement.

14. Optimum explained to The Embassy that Parties are not allowed to unilaterally renegotiate payment terms when convenient in contracts entered into in the United States.

15. Optimum is owed the amount of $270,161.40 from The Embassy for work performed and accepted. Optimum is also entitled to recover the statutory interest rate of 18% per year plus attorney's fees pursuant to the DC Prompt Payment Act. Optimum is also entitled to recover delay damages pursuant to §11.3 of the Agreement.

## COUNT I – BREACH OF CONTRACT

16. Optimum realleges and incorporates paragraphs 1 through 15 above by reference as if fully set forth herein.

17. Optimum and The Embassy entered into a Contract on or about March 16, 2020, whereby Optimum agreed to perform work in exchange for timely payment upon an agreed draw schedule.

18. Optimum fully performed its obligations under the Agreement and the work was accepted by the Embassy and The Embassy is using the work to this day.

19. Notwithstanding repeated reminders from Optimum, The Embassy has failed and refused to pay Optimum the agreed upon amounts.

20. As a direct and proximate cause of The Embassy's failure to pay for the work,

Optimum has suffered a loss in revenue and incurred additional expenses. At all times Optimum fully performed its obligations under the Agreement.

WHEREFORE, Optimum Construction, Inc. demands a judgment for Breach of Contract against Defendant The Embassy in an amount in excess of $500,000.00, plus pre-judgment interest, attorneys' fees, costs and such other relief as allowed by the law.

## COUNT II – VIOLATION OF PROMPT PAYMENT ACT

21. Plaintiff Optimum adopts and incorporates by reference each and every one of the afore mentioned paragraphs with the same effect as if fully restated herein.

22. At all times relevant hereto Optimum was a Contractor and The Embassy was an Owner as those terms are defined within §27-131 of the DC Code.

23. The Embassy failed to pay undisputed amounts owed to Optimum within 7 days from the agreed upon payment dates in violation of §27-132 of the DC Code.

24. The Embassy has no good faith dispute that the payments were due when requested by Optimum and has accepted and made use of the work and improvements to the premises without paying Optimum for the same.

WHEREFORE, Plaintiff Optimum Construction, Inc. demands judgment for violation of the DC Prompt Payment Act in an amount in excess of $500,000.00, plus pre-judgment interest, attorneys' fees, costs and such other relief as allowed by the law.

Date: 10/25/2021

Roderick R. Barnes (Bar No. 24795)
Rollins, Smalkin, Richards & Mackie, L.L.C.
300 E. Lombard Street, Suite 900
Baltimore, MD 21202
Ph: (410) 727-2443
Fx: (410) 727-8390
rbarnes@rsrm.com
*Attorneys for Plaintiff, Optimum Construction, Inc.*